UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

---

JOHN DOE,                                              File No.

    Plaintiff,

v.

BRENDAN P. CURRAN, Otsego
County Prosecuting Attorney,
MATTHEW NOWICKI, Otsego
County Sheriff, RON PUZON,
former Otsego County Deputy, in
their individual and official
capacities, and RICHARD SNYDER,
Governor of the State of Michigan,
and COL. KRISTE ETUE, Director
of the Michigan State Police,
in their official capacities.

    Defendants.

---

# COMPLAINT

## INTRODUCTION

    1.    This is an action to remedy violations of constitutional law arising out of the attempts of state actors to force a citizen and his family to sell and move from their home.

    2.    On August 25, 2016, the U.S. Court of Appeals for the Sixth Circuit held, in a published and binding decision, that Michigan's Sex Offender Registration Act M.C.L. § 28.721 *et. seq.* ("SORA 2011"), imposes punishment, and that therefore retroactive application of SORA violates the Ex Post Facto Clause of

1

the United States Constitution. *Does v. Snyder*, 843 F.3d 696 (6th Cir. 2016) (Exhibit 1). The U.S. Supreme Court denied the petition for certiorari in this case brought by Defendants Snyder and Etue, challenging the Sixth Circuit's decision. *Snyder v. John Does #1-5, et al.,* 138 S. Ct. 55 (2017).

3. SORA has been amended repeatedly since its original adoption, including amendments in 2006 and 2011.

4. Plaintiff John Doe[1] is a resident of Otsego County who has been retroactively required to comply with SORA 2011 because of a 2008 juvenile criminal conviction.

5. Under SORA 2011, Plaintiff is subjected to a vast array of state-imposed restrictions that encompass virtually every facet of his life, including restrictions on where he may live and work. Plaintiff must comply with these extensive restrictions and obligations, or face criminal sanctions.

6. Plaintiff is strictly liable for complying with a sweeping and complex law, even though the language of the law does not provide clear notice of what is prohibited or required, either for those subject to it or for those who enforce it, making full compliance with the law impossible.

7. Indeed, because of the lack of clear notice under the law, Plaintiff has been told he must sell his recently purchased home and move his partner and three children to a new location. In September 2017, then Deputy Ron Puzon, with the

---

[1] John Doe is a pseudonym. Mr. Doe is filing a motion seeking permission to proceed anonymously in this action.

2

Otsego County Sheriff Department ("OCSD"), informed Plaintiff that because of a recent Sixth Circuit Court decision, Plaintiff no longer had to comply with the vehicle registration requirements or student safety zone ("SSZ") restrictions of SORA 2011. Plaintiff specifically spoke with Deputy Puzon about his intent to buy his home within Otsego County, and Deputy Puzon assured him that he could purchase the home without violating his SORA 2011 requirements.

8. Plaintiff bought the home and moved his family into the home. Then, in January 2018, Plaintiff received a letter from Otsego County Prosecuting Attorney, Brendan Curran, stating that the location of Plaintiff's new home violated the SSZ requirement of SORA 2011 and that Plaintiff would have to move by July 4, 2018 or be prosecuted for violating SORA 2011. (Exhibit 1.) Plaintiff's home is located over 1,000 feet from the nearest school when measured using driving directions. Upon information and belief, the home may be located less than 1,000 feet from the school if measured directly from property line to property line.

9. Under SORA 2011's SSZ restriction, anyone subject to SORA 2011 is prohibited from residing "within 1,000 feet" of a school property. However, SORA 2011 does not specify whether the 1,000 SSZ distance should be measured property line to property line, using driving directions, or using another possible method.

10. Plaintiff seeks declaratory and injunctive relief barring application of the law as applied to him, and barring application of the law as unconstitutional on its face because it is void for vagueness.

3

## JURISDICTION

11. Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1343 because Plaintiff seeks redress for the deprivation of rights secured by the U.S. Constitution. Plaintiff's federal claims are brought pursuant to 42 U.S.C. § 1983.

12. Plaintiff's claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201-2202, by Federal Rules of Civil Procedure 57 and 65, and by the legal and equitable powers of this Court.

13. Venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C. § 1391(b).

## THE PARTIES

14. Plaintiff John Doe resides in Otsego County, in the Eastern District of Michigan.

15. Defendant Brendan Curran is the Otsego County Prosecuting Attorney. He is sued in his individual and official capacities.

16. Defendant Curran is the prosecutor who has threatened to bring criminal charges against Plaintiff. Moreover, Defendant Curran is an appropriate defendant in a case challenging the constitutionality of a state statute that he is threatening to enforce.

17. Defendant Matthew Nowicki is the Otsego County Sheriff. He is sued in his individual and official capacities.

18. OCSD is a local law enforcement agency charged with enforcing SORA 2011 and registering offenders.  OCSD is also responsible to appropriately train its

deputies, employees, and agents regarding interactions with citizens generally, and registration of individuals required to do so under SORA 2011 specifically.

19. Sheriff Nowicki is also an appropriate defendant in a case challenging the constitutionality of a state statute that OCSD is charged with enforcing.

20. Defendant Ron Puzon is a former Otsego County Deputy. He is sued in his individual and official capacities.

21. Former Deputy Puzon was the law enforcement officer who instructed Plaintiff that the home he planned to buy did not violate SORA 2011 and that Plaintiff would be permitted to register his address at the home's location on the Sex Offender Registry.

22. Defendant Richard Snyder is the Governor of Michigan. He is sued in his official capacity.

23. Pursuant to Article 5, §1 of the Michigan Constitution, the executive power of the state is vested in the Governor. The Michigan Constitution further provides that the Governor shall take care that applicable federal and state laws are faithfully executed. Mich. Const., Art. 5, § 8. Defendant Snyder is ultimately responsible for the enforcement of the laws of this state, and for supervision of all state departments, including the Michigan State Police.

24. The Governor is an appropriate defendant in a case challenging the constitutionality of a state statute.

25. Defendant Colonel Kriste Etue is the director of the Michigan State Police. She is sued in her official capacity.

26. The Michigan State Police ("MSP" or "the State Police") maintains Michigan's sex offender registry. Mich. Comp. Laws § 28.721 *et seq.* The State Police's responsibilities include enforcing SORA 2011, maintaining the state's database of sex offenders, maintaining an on-line public sex offender registry, registering offenders (along with other law enforcement agencies), developing registration forms, providing statutorily-required notices to registrants, collecting registration fees, and coordinating with national law enforcement and the national sex offender registry. *See* Mich. Comp. Laws §§ 28.724, 28.724a, and 28.725 *et seq.* MSP has also undertaken training of local law enforcement agencies on legally-compliant enforcement of SORA 2011.

27. The director of the Michigan State Police is an appropriate defendant in a case challenging the constitutionality of Michigan's Sex Offender Registration Act.

## LEGAL STATUS OF SORA

28. Effective July 1, 2011, Michigan's Sex Offender Registration Act was extensively amended to comply with the federal Sex Offender Registration and Notification Act (SORNA), 42 U.S.C. § 16901 *et seq.,* which is Title I of the Adam Walsh Child Protection and Safety Act of 2006 (Public Law 109-248).

29. Although states were required to comply with SORNA by July 27, 2011, or lose federal law enforcement funds, to date only 18 states have substantially complied. The vast majority of states have elected not to comply

6

because they are concerned about the costs and effectiveness of the federal SORNA requirements.

30. The Sixth Circuit in *Does v. Snyder*, 834 F.3d 696, 706 (6th Cir. 2016) specifically held that retroactive application of the 2006 and 2011 amendments must cease.

31. In *Does*, the federal district court held that SORA's geographic exclusion zones are void for vagueness. *See Does v. Snyder,* 101 F. Supp. 3d 672, 682-85 (E.D. Mich. 2015) (Cleland, J.), *reversed on other grounds*, 843 F.3d 696 (6th Cir. 2016). The district court also found that certain SORA reporting requirements are unconstitutionally vague. *Id.*

32. In reviewing the district court's opinion, the Sixth Circuit said that because its ruling on the Ex Post Facto claim meant that "none of [SORA's] contested provisions may now be applied to the plaintiffs in this lawsuit," any ruling as to the remaining issues (including vagueness) "would be dicta" and would therefore have to "wait for another day." *Does*, at 706. However, the Court did not reverse the district court's ruling on vagueness, instead specifying that it was reversing "the district court's decision that SORA is not an Ex Post Facto law." *Id.*

33. As the federal district court found in *Does*, SORA 2011 violates the Due Process Clause because many of its provisions are void for vagueness. See *See Does v. Snyder,* 101 F. Supp. 3d 672, 682-85 (E.D. Mich. 2015) (Cleland, J.), *reversed on other grounds*, 834 F.3d 696 (6th Cir. 2016).

7

34. On June 30, 2016, the Michigan Court of Appeals held in a published decision that, although it was not bound by *Does*, SORA's reporting requirements are unconstitutionally vague for the reasons set forth in Judge Cleland's opinion. See *People v. Solloway,* 891 N.W.2d 255, 264-66 (Mich. Ct. App. 2016).

## FACTUAL ALLEGATIONS

35. In 2008, Plaintiff was convicted of "lewd and lascivious molestation by a minor under 17 on a minor under 12," a Tier 2 sex offense.

36. Plaintiff was 16 years old on the date of his arrest and 17 years old on the date of his conviction.

37. SORA 2011 fundamentally changed Michigan's sex offender registry by categorizing registrants into tiers; requiring in-person reporting of vast amounts of personal information; and retroactively lengthening the registration period for most registrants. In addition, SORA 2011 imposed new duties on local law enforcement agencies.

38. In summary, SORA 2011 subjects Plaintiff to continuous reporting, surveillance, and supervision. In addition to reporting in person at regular intervals, Plaintiff must report in person within three business days whenever certain information changes. Mich. Comp. Laws § 28.722(g). The immediate, in-person reporting requirement is triggered whenever the Plaintiff:

- changes his residence;
- begins, changes, or discontinues employment;
- enrolls or dis-enrolls as a student;
- changes his name;

- intends to travel for more than seven days;
- established an e-mail address, instant message address, or other Internet designation; and
- buys or begins using a vehicle, or ceases owning or using a vehicle.

Mich. Comp. Laws § 28.725(1).

39. SORA 2011 also has the practical effect of severely limiting Plaintiff's access to housing.

40. SORA 2011 bars Plaintiff from living within 1,000 feet of school property, making a substantial number of potential homes unavailable as a matter of law. Mich. Comp. Laws § 28.734.

41. Plaintiff is employed full-time and is in a committed relationship with the mother of his 11-month-old child. His partner has two school-aged children from another relationship who also live with them.

42. Plaintiff provides for his family, including all three children, but earns only slightly more than minimum wage. Plaintiff's partner also works, earning approximately minimum wage. The biological father of the two older children is unable to support the children financially in any way.

43. Plaintiff's access to affordable housing is very limited, as home prices in his community are quickly rising and the weather and frequent difficult traffic conditions in northern Michigan make it necessary to live in reasonable proximity to school and work.

44. Plaintiff chose his current home because it is near both his and his partner's work and their children's school. It was also affordable and allows him to pay less through a mortgage than he was paying in rent.

45. Prior to finding his current home, Plaintiff and his family were facing homelessness due to the loss of rental assistance from the Northeast Michigan Community Service Agency.

46. Prior to purchasing his home, Plaintiff reported to the OCSD in September 2017. Under SORA 2011, Plaintiff is required to report quarterly and his September 2017 visit was in compliance with this provision.

47. During his September 2017 report, Plaintiff spoke with then OCSD clerk Deputy Ron Puzon about his desire to purchase a new home and move his family.

48. Plaintiff specifically told Deputy Puzon that they had chosen a home that they would like to purchase and that they had selected the home because it was close to the children's school.

49. Plaintiff further told Deputy Puzon that his partner's children would be attending the school located near the home he wished to buy.

50. Deputy Puzon told Plaintiff that he could purchase the home, because following the recent Sixth Circuit Court decision in *Does*, Plaintiff was no longer required to comply with SORA 2011 student safety zone or vehicle registration requirements.

51. Relying on this information, Plaintiff made an offer to purchase the home on November 8, 2017. He then closed on the new home on December 20, 2017 and moved in on December 23 and 24, 2017.

52. On January 23, 2018, Plaintiff received a letter from Otsego County Prosecutor, Brendan Curran.

53. In the letter (attached as Exhibit 1 to this Complaint), Mr. Curran stated:

> *Dear [Mr. Doe]:*
>
> *I have been provided with MSP 73-187-18, a report detailing the investigation of you breaking the law by residing within a student safety zone (within 1000 feet of any school property). My review of that document gives me confidence that you are in violation of the law, and that you can be prosecuted for violating this part of the Sex Offender Registration Act. I would like to avoid prosecuting you for this, for various reasons.*
>
> *I tend to believe that you thought you were acting legally when you recently bought a house close to school property. I understand that there has been some measure of confusion in the wake of the decision in Does v. Snyder, ___ F3d ___ (CA 6, 2016), and I further understand that you may have been given unreliable advice from a former employee of the Otsego County Sheriff's Office. I am reasonably confident that you were not trying to commit a crime.*
>
> *However, the Does decision does not prevent me from prosecuting you. The relationship between the SORA Amendment dates and your 2008 Florida conviction means you continue to commit a crime by residing in a student safety zone.*
>
> *I am willing to not prosecute you for this continuing violation provided you are willing to fix the problem. If you voluntarily move by quitting your current residence and satisfying police that you reside outside a student safety zone, I won't prosecute you for this violation at all.*
>
> *I understand that you recently bought your current house, and I'm also aware that homes in this community tend to sell for better prices in better weather, and I want to be as fair about this as I can, while still recognizing my duty to enforce the law. Therefore, I will reexamine this matter on or about the fourth of July, 2018. If you continue to reside within a student safety zone at that time, you should expect to be prosecuted by me. If you have moved and have sold the current home by that date, then I will not prosecute you for this.*

> *It may well be wise for you to consult with the attorney of your choosing about this before deciding upon a course of action. I'll check with police mid-summer and see what the circumstances are then. Should you have further questions or concerns, you are welcome to contact my office at your convenience.*
>
> *Sincerely,*
>
> *Brendan P. Curran*

54. On June 8, 2018 at approximately 9:30 p.m., Cole Wright, a Michigan State Police Trooper, appeared at Plaintiff's home and stated that he was "reminding" Plaintiff that he needed to be out of his home by July 4, 2018.

55. Plaintiff bought his home for $68,000, of which he paid $14,760 in a down payment.

56. Plaintiff spent $3,389.26 in closing costs through the purchase of his home.

57. He also spent $400 to have the home inspected.

58. In order to move his family to the newly purchased home, Plaintiff rented a moving truck for $71 and spent approximately $50 on gas for the truck.

59. After moving into the home, Plaintiff spent $5,800 on basement repairs.

60. Plaintiff's monthly house payment is $486.

61. Housing costs in Plaintiff's community are increasing rapidly, and there are not rental properties or homes for sale that are suitable for a family of five at a comparable or even close to comparable cost.

62. Plaintiff's current home allows the children to have bedrooms, something they had not been able to afford in previous homes.

63. Plaintiff's partner's 9-year-old child has moved 17 times in her life, including a period of homelessness, and would experience emotional trauma if forced to move again.

64. When measured with driving directions, Plaintiff's home is more than 1,000 feet from the nearest school.

65. Upon information and belief, the home may be located less than 1,000 feet from the school if measured directly from property line to property line.

66. Plaintiff has been harmed because the restrictions and obligations of SORA 2011 are so vague that Plaintiff is unable to know whether or not he is in violation of the law. Moreover, even the OSCD and the Otsego County Prosecutor have attempted to apply the requirements of SORA 2011 differently.

67. Plaintiff often cannot know if he is working, residing, or "loitering" within 1,000 feet of school property because the property boundaries are unknown and the distances are impossible to measure without sophisticated equipment.

68. SORA 2011 does not specify whether the 1,000 feet is measured building to building or property-line to property-line, or by using driving directions. There is also no easy way to gauge where school property lines were located.

69. SORA 2011 imposes strict criminal liability despite the impossibility of compliance.

70. Plaintiff fears that despite his best efforts to understand and comply with the law, and despite the absence of any intention to violate the law, he will be held strictly liable for any failure to comply. This fear is reasonable, in light of the communication from Prosecutor Curran and the June 8, 2018 visit to his home by the Michigan State Police.

71. SORA 2011 imposes penalties of up to 10 years imprisonment for violations of the Act. Mich. Comp. Laws §§ 28.729(1); 28.734(2); 28.735(2).

72. The State of Michigan does not make maps available to the public showing where the exclusion zones are located or what their boundaries are.

73. It is impossible for ordinary people to identify the areas that are inside and outside the exclusion zones. The task is difficult even for experts with sophisticated mapping technology. Distances are difficult to estimate or measure and property boundaries are difficult to locate. Moreover, exclusion zones often have irregular shapes, because they are measured from property boundaries – since many law enforcement agencies assume that is how SORA 2011 requires that they be measured, even though the statute is unclear – and because the zones overlap.

### COUNT I: VIOLATION OF THE DUE PROCESS CLAUSE
### (Vagueness, Impossibility and Strict Liability)

74. Under 42 U.S.C. § 1983, state actors are liable at law or equity for their acts or omissions undertaken under color of law which deprive any person of the rights secured by the Constitution and laws of the United States.

75.  Defendants are state actors and, at all times relevant to this Complaint, were acting and are acting under color of law.

76.  The Due Process Clause of the Fourteenth Amendment prohibits states from enforcing laws that are unconstitutionally vague.  As a matter of due process, statutory requirements must be written with sufficient specificity that persons of ordinary intelligence need not guess at their meaning and will not differ as to their application.

77.  SORA 2011 contains provisions that are invalid under the vagueness doctrine because those provisions fail to provide a person of ordinary intelligence fair notice of what is required and what is prohibited under the statute, making it impossible for the Plaintiff to conform his conduct to the statutory requirements, and making it likely that the statute will be enforced in different ways in different places or against different people.

78.  The Due Process Clause of the Fourteenth Amendment prohibits states from enforcing laws with which it is impossible to comply.  SORA 2011 contains provisions with which compliance is impossible.

79.  The Due Process Clause also limits the use of strict liability in the criminal law.  SORA 2011 contains provisions that impose strict liability in violation of due process.

80.  The parts of SORA 2011 that are void for vagueness, or are impossible to comply with, or wrongly impose strict liability include but are not limited to the

prohibition on living within a student safety zone in Mich. Comp. Laws § 28.733-734.

## LACK OF LEGAL REMEDY

81. Plaintiff's harm is ongoing, and cannot be alleviated except by injunctive relief.

82. No other remedy is available at law.

## REQUEST FOR RELIEF

Wherefore, Plaintiff requests that this Court:

a. Issue a judgment, pursuant to 28 U.S.C. §§ 2201-2202, declaring that SORA 2011 is void under the Due Process Clause of the Fourteenth Amendment due to vagueness, impossibility, and wrongful imposition of strict liability, and issue a preliminary and permanent injunction restraining Defendants from enforcing against Plaintiff those provisions of SORA 2011 that are unconstitutional, including but not limited to an injunction prohibiting any Defendants or other law enforcement officials from instituting criminal prosecution against Plaintiff under SORA 2011's SSZ provisions;

b. Award Plaintiff money damages caused by the actions of Defendants Curran, Nowicki, Puzon, and their agents, in an amount sufficient to compensate him for expenses incurred and to be incurred as the result of their unlawful actions, and to compensate him appropriately for emotional distress and all other economic and non-economic harms;

c. Award Plaintiff all available punitive and other exemplary damages available;

d. Award Plaintiff his costs and attorneys' fees pursuant to 42 U.S.C. § 1988; and

e. Grant such other relief as the Court finds just and proper.

                                      PINSKY, SMITH, FAYETTE & KENNEDY, LLP
                                      Attorneys for Plaintiff

Dated: June 19, 2018          By: /s/ *Sarah R. Howard*
                                      Sarah Riley Howard
                                      Business Address:
                                      146 Monroe Center, N.W., Suite 805
                                      Grand Rapids, MI 49503
                                      (616) 451-8496
                                      showard@psfklaw.com