# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

JOHN DOE,

        Plaintiff,

v.                                                              Case No. 18-11935

BRENDAN P. CURRAN, et al.,

        Defendants.

_____/

## OPINION AND ORDER RESOLVING MOTIONS FOR SUMMARY JUDGMENT AND CONTINUING PRELIMINARY INJUNCTION

Plaintiffs John Doe 1 and John Doe 2 filed a one-count civil rights complaint alleging that Defendants, who are various Michigan state and county government and law enforcement officials, violated their rights under the Fourteenth Amendment by enforcing against them unconstitutional portions of Michigan's Sex Offender Registration Act ("SORA"). Mich. Comp. Laws § 28.721 *et seq.* Plaintiffs seek declaratory and injunctive relief related to certain allegedly unconstitutional provisions of SORA, monetary damages, and attorney fees. On November 26, 2019, the case was reassigned to the undersigned judge as a companion to certified class action *Does v. Snyder*, No. 16-13137 (E.D. Mich.) ("*Does II*").

Pending before the court are four motions for summary judgment. Each Defendant moves for summary judgment *in toto*, and Plaintiffs move for summary judgment in part, *i.e.*, as to their prayer for injunctive and declaratory relief on their Fourteenth Amendment vagueness and strict liability claims. The motions have been fully briefed, and the court determines that a hearing is not necessary. E.D. Mich. LR

7.1(f)(2). For the reasons explained below, the court will grant Defendants' motions for summary judgment on the individual capacity claims. The court will deny without prejudice Plaintiffs' and Defendants' motions as they relate to the official capacity claims. Finally, the court will stay the case until the resolution of *Does II* and will continue the preliminary injunction currently in place for Doe 1.

## I. BACKGROUND

### A. Factual Background

Plaintiffs are both Michigan residents who are required to comply with SORA. Plaintiff John Doe 1 lives in Otsego County and is subject to SORA based on a 2008 juvenile criminal conviction. Plaintiff John Doe 2 lives in Genesee County and is subject to SORA based on a 2010 criminal conviction.

Plaintiffs sue Defendants Richard Snyder, formerly Governor of Michigan, and Kristine Etue, formerly director of the Michigan State Police, in their official capacities for their roles in enforcing SORA. They sue the remaining Defendants—a county prosecutor (Curran), a county sheriff (Nowicki), a county deputy (Puzon) and a probation officer (Schriner)—in both their official and individual capacities.

#### 1. SORA and *Does I*

Under SORA's student safety zone restriction, anyone subject to the Act may not reside, "loiter," or work "within 1,000 feet" of school property. Mich. Comp. Laws §§ 28.734(1)(a)–(b), 28.735(1). SORA defines "school property" as:

> [A] building, facility, structure, or real property owned, leased, or otherwise controlled by a school, other than a building, facility, structure, or real property that is no longer in use on a permanent or continuous basis, to which either of the following applies: (i) [i]t is used to impart educational

instruction[, or] (ii) [i]t is for use by students not more than 19 years of age for sports or other recreational activities.

Mich. Comp. Laws § 28.733(e). The statute also defines "loiter" as "to remain for a period of time and under circumstances that a reasonable person would determine is for the primary purpose of observing or contacting minors." Mich. Comp. Laws § 28.733(b).

Violating SORA is a strict liability offense. For the first violation, "the individual is guilty of a misdemeanor punishable by imprisonment for not more than 1 year or a fine of not more than $1,000.00, or both." Mich. Comp. Laws § 28.735(2)(a). Individuals who violate SORA more than once are "guilty of a felony punishable by imprisonment for not more than 2 years or a fine of not more than $2,000.00, or both." Mich. Comp. Laws § 28.735(2)(b).

In *Does v. Snyder*, No. 12-11194 (E.D. Mich.) ("*Does I*"), this court declared that SORA's student safety zone provision and strict liability regime violated the Due Process Clause. *Does I* (E.D. Mich. Mar. 31, 2015) (ECF No. 103, PageID. 5890–95, 5909.) On appeal, the Sixth Circuit declined to address these rulings—thereby leaving them intact—but instead reversed for reasons related to the plaintiffs' claim under the Ex Post Facto Clause. *Does #1-5 v. Snyder*, 834 F.3d 696, 706 (6th Cir. 2016).

### 2. John Doe 1

In July 2008, Doe 1 was convicted in Florida of lewd and lascivious molestation by a minor under 17 on a minor under 12. (ECF No.68-1, PageID.644.) After his release from jail in 2012, he was required to register as a sex offender in Florida; however, he failed to do so and was sentenced to two additional years in jail. (*Id.* at PageID.649–50.) Doe 1 moved to Michigan after his release in 2014. (*Id.* at 50.) Thereafter, Doe 1 moved

3

to Michigan where he was required to comply with SORA. (*Id.* at 652.) He oscillated between living in Otsego and Monroe Counties, and in 2016 he was charged with failing to report an address change. (*Id.* at 652–53.) He was convicted and sentenced to four months in county jail, which he served on work release. (*Id.* at 653–54.)

In September 2017, Doe 1 reported to the Otsego County Sheriff's Office and met with then-deputy Defendant Ron Puzon. (*Id.* at 654–55.) Defendant Mathew Nowicki served as the Otsego County Sheriff at the time of these events. Doe 1 contends that Puzon told him that he did not need to comply with SORA's student safety zone provision because the provision had been ruled unconstitutionally vague in *Does I*. (*Id.* at 656–57.) Puzon denies ever telling Doe 1 that he did not need to comply with SORA. (ECF No. 68-2, PageID.717.) After speaking with Puzon, Doe 1 alleges that he researched online and confirmed on the National Association for Rational Sex Offense Legislation's website that SORA's student safety zone requirements had been declared unconstitutional. (ECF No. 68-1, PageID.657.)

Believing that he did not need to comply with SORA's safety zone restrictions, Doe 1 purchased a home in December 2017 in which he lived with his fiancé and three children. (*Id.* at 631, 658.) He admitted that his house was close to the Gaylord Intermediate Schools campus that the close proximity motivated him to select the home because his fiancé's daughter attended the school. (*Id.* at 631–32.)

The parties used online tools to measure the distance from Doe 1's home to student safety zones. Puzon explained that generally, the student safety zone is measured from property line to property line. (ECF No. 68-2, PageID.698.) However,

4

Puzon acknowledged that there was no official standard for measuring the student safety zones and that he "tried to do the best [he] could with . . . what information [he] had." (*Id.*) Puzon used a publicly available Otsego County Equalization mapping tool[1] similar to Google Maps to determine whether Doe 1's home fell within a student safety zone. (*Id.* at 702.) The tool allowed Puzon to measure the distance from a given address to the nearest school. (*Id.* at 703–04.) According to Doe 1, his home is 528 feet away from the nearest school when measured using Google Maps and 1056 feet away from the nearest school when measured using MapQuest. (ECF No. 70-2, PageID.777.) Defendants assert that Doe 1's home is 454 feet away from the nearest school when measured using Google Maps. (*Id.*)

In January 2018, Defendant Brendan Curran, the Otsego County Prosecutor, sent Doe 1 a letter explaining that he was living in a student safety zone and, as such, could be prosecuted for violating SORA. (ECF No. 68-3, PageID.726.) The Curran letter stated that because Doe 1 claimed to have received inaccurate guidance about the student safety zone, Curran would allow Doe 1 until July 2018 to find a new house and move or face prosecution. (*Id.*) Curran also stated in the letter that he believed that Doe 1 thought his actions were legal because there existed "some measure of confusion" regarding SORA's student safety zones. (*Id.*) Instead of moving, Doe 1 filed this action.

### 3. John Doe 2

In 2010, John Doe 2 was convicted in Louisiana for possession of child

---

[1] Property Search*, Otsego County Michigan*, https://www.otsegocountymi.gov/county-government-2/equalization/property-search/ (last visited Jan. 6, 2020).

pornography, an offense that subjected him to SORA when he moved to Michigan. (ECF No. 32, PageID.207.) As an Army veteran, Doe 2 relied on the Veteran's Administration's Supportive Services of Veteran Families program to rent a home. (ECF No. 70-2, PageID.777.) In 2017, Doe 2 was convicted of failing to register as a sex offender, and the Genesee County Circuit Court ordered him to a term of probation under the supervision of the Michigan Department of Corrections. (ECF No. 66-3, PageID.535–36.) One condition of Doe 2's probation mirrors SORA's student safety zone prohibition—he "must not reside, work or loiter within a student safety zone defined as [sic] 1,000 feet of school property (developmental kindergarten through 12th grade school) unless [he met] a statutory exception." (*Id.* at 535.)

When the probation order was entered, Doe 2 lived in Shiawassee County, Michigan. Defendant Kevin Schriner initially supervised Doe 2's probation. (*Id.*) After completing the probation orientation process with Schriner, Doe 2's supervision was transferred to a probation agent in Shiawassee County. (ECF No. 66-2, PageID.524.) But in August 2018, Doe 2 moved to Genesee County, and Schriner was re-assigned to supervise his probation. (*Id.* at 525.)

When Schriner resumed supervising Doe 2's probation, he arranged to visit Doe 2 at his home to verify his residence. (*Id.*) As part of the residency verification, Schriner investigated whether Doe 2 lived within a student safety zone. (*Id.* at 526–27, 529–30.) Schriner used Google Maps to measure Doe 2's home from its property line to the nearest student safety zone and concluded that Doe 2 lived within 950 feet of a student safety zone, in violation of SORA and his probation terms. (*Id.* at 527–28.) Doe 2 claims

6

that when *he* measured the distance from his home to the nearest student safety zone using Google Maps, his home was 2112 feet away from the nearest school and that when he measured the distance using MapQuest, his home was 1056 feet away from the nearest school. (ECF No. 70-2, PageID.778.)

Schriner requested a measurement from the Michigan State Police to corroborate his findings. (ECF No. 66-4, PageID.538.) A Michigan State Police trooper confirmed that Schriner lived within the student safety zone but determined that he lived 917 feet from the school. (*Id.*) Thereafter, Schriner met with Doe 2 in-person to explain that he needed to move to remedy the violations and comply with SORA, and he offered to help Doe 2 find new housing. (ECF No. 66-2, PageID.529–30.) Schriner also sent Doe 2 a letter notifying him of the violation and warning him that probation violation proceedings would occur if he did not vacate his current residence. (ECF No. 65-5, PageID.540.)

Shortly after receiving the warning letter, Doe 2 obtained counsel, who contacted Schriner and informed him that Doe 2 planned to sue for an injunction precluding the enforcement of SORA's student safety zone provision. (ECF No. 66, PageID.468.) Schriner then submitted to the judge who ordered Doe 2's probation a report requesting an extension for Doe 2's compliance. The judge extended Doe 2's time to comply with SORA and his probation order, pending the outcome of Doe 2's threatened litigation. (ECF No. 66-2, PageID.530–31.) On September 27, 2018, after the filing of the instant lawsuit, the Genesee County Circuit Court discharged Doe 2 from probation. (ECF No. 66-7, PageID.544.)

### B. Procedural History

In July 2018, Doe 1 filed a motion for preliminary injunction to prevent Curran from prosecuting him for living within a student safety zone. (ECF No. 6.) The judge assigned to this case at that time granted the motion. (ECF No. 27.) Since the case was reassigned to the undersigned judge, the court entered a stipulated order to extend the preliminary injunction until the resolution of the *Does II* case. (ECF No. 90.)

### II. STANDARD

Summary judgment is appropriate when there exists no dispute of material fact and the moving party demonstrates entitlement to judgment as a matter of law. Fed. R. Civ. P. 56(a). In evaluating a motion for summary judgment, the court considers all evidence, and all reasonable inferences flowing therefrom, in the light most favorable to the nonmoving party. *Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir. 2015). The court may not make credibility determinations or weigh the evidence presented in support or opposition to a motion for summary judgment, only the finder of fact can make such determinations. *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014).

The movant has the initial burden of showing—pointing out—the absence of a genuine dispute as to any material fact; i.e., "an absence of evidence to support the nonmoving party's case." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 325 (1986). The burden then shifts to the nonmoving party to set forth enough admissible evidence to raise a genuine issue of material fact for trial. *Laster*, 746 F.3d at 726 (citing *Celotex Corp.*, 477 U.S. at 324). A genuine issue exists "if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248; *Williams v. AT&T Mobility Servs. LLC*, 847 F.3d 384, 391 (6th Cir. 2017). Not all factual disputes are material. A fact is "material" for purposes of summary judgment when proof of that fact would establish or refute an essential element of the claim "and would affect the application of the governing law to the rights of the parties." *Rachells v. Cingular Wireless Employee Servs., LLC*, 732 F.3d 652, 660 (6th Cir. 2013).

### III. DISCUSSION

All Defendants move for summary judgment. The Defendants sued in their individual capacities argue that they are entitled to some form of immunity. Defendants also argue that Plaintiffs' official capacity claims for injunctive relief are subsumed by the *Does II* certified class action. Plaintiffs move for summary judgment and injunctive relief on their strict liability and due process challenges to SORA (their official capacity claims). The court begins by addressing the individual capacity claims against Defendants Curran, Schriner, Nowicki, and Puzon.

#### A. Individual Capacity Claims

#### 1. Prosecutorial Immunity (Curran)

Plaintiffs sue Curran in his individual capacity for a letter he sent to Doe 1 in which he "threatened" to prosecute Doe 1 if he failed to move to a new home outside of a student safety zone. Curran argues that he is entitled to absolute prosecutorial immunity for this action. (ECF No. 68, PageID.588.) Plaintiffs assert that Curran is not entitled to prosecutorial immunity because he was acting in a pre-charge, quasi-investigator capacity when he sent the letter to Doe 1. (ECF No. 78, PageID.1048.)

9

"[A]" prosecutor enjoys absolute immunity from § 1983 suits for damages when he acts within the scope of his prosecutorial duties." *Imbler v. Pachtman*, 424 U.S. 409, 420 (1976). Prosecutorial immunity is appropriate when the prosecutor's "challenged activities [were] an integral part of the judicial process." *Id.* at 430 (internal quotation omitted). Absolute immunity protects prosecutors from exposure to suits, not just liability. *See McSurely v. McClellan*, 697 F.2d 309, 315 (D.C. Cir. 1982). "[T]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Burns v. Reed*, 500 U.S. 478, 486 (1991).

Courts use a "functional approach" to determine whether a prosecutor's actions entitle him to absolute immunity. *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993). Protected acts include those "undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the state." *Id.* at 273. "The analytical key to prosecutorial immunity . . . is advocacy—whether the actions in question are those of an advocate." *Skinner v. Govorchin*, 463 F.3d 518, 525 (6th Cir. 2006) (internal quotation marks omitted). The Sixth Circuit has held that a prosecutor's pre-charge actions are not the kind of advocacy protected by absolute immunity. *Spurlock v. Thompson*, 330 F.3d 791, 799 (6th Cir. 2003) ("[W]here the role as advocate has not yet begun, namely prior to indictment, or where it has concluded, absolute immunity does not apply.").

Here, Curran is not entitled to prosecutorial immunity for his pre-charge conduct. When Curran sent the letter to Doe 1, no charges had been filed against Doe 1 for violating SORA. Thus, Curran's "role as advocate ha[d] not yet begun." *Spurlock*, 330

F.3d. at 799. However, for reasons explained later in this opinion, he is entitled to qualified immunity. *See infra* Part III.A.3.

### 2. Absolute Quasi-Judicial Immunity (Schriner)

Defendant Schriner served as the probation officer for Doe 2. He is sued in his individual capacity for informing Doe 2 that he must move from his home by September 21, 2018, or that Schriner would issue a probation violation. (ECF No. 32, PageID.202–04.) Schriner argues that he is entitled to absolute quasi-judicial immunity for this action, which he claims was taken to ensure that Doe 2 complied with the terms of his probation. (ECF No. 66, PageID.501.) In the alternative, he argues that he is entitled to qualified immunity. (*Id.* at 504.)

"Quasi-judicial immunity extends to those persons performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial offer who is immune." *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994). The Supreme Court expressly left open the question of which immunity defense applies to probation officers. *See Martinez v. California*, 444 U.S. 277, 285 n.11 (1980). However, persuasive Sixth Circuit precedent recognizes that "[a] probation officer is entitled to absolute quasi-judicial immunity from suit on claims that arise out of his activities to ensure that the plaintiff complies with the terms of court supervision." *Faber v. Smith*, No. 17-2523, 2018 WL 6918704, at *2 (6th Cir. June 6, 2018), *reh'g denied* (June 28, 2018) (citing *Timson v. Wright*, 532 F.2d 552, 553 (6th Cir. 1976) (per curiam); *Huffer v. Bogen*, 503 F. App'x 455, 461 (6th Cir. 2012); *Loggins v. Franklin County*, 218 F. App'x 466, 476 (6th Cir. 2007)).

For example, in *Balas v. Leishman-Donaldson*, 976 F.2d 733 (6th Cir. 1992) (table), the Sixth Circuit held that a bailiff who ensured a probationer complied with his probation terms could be entitled to absolute quasi-judicial immunity. The court explained that:

> When a judge seeks to determine whether a defendant is complying with the terms of probation, the judge is performing a judicial function. To the extent court personnel were investigating whether [the plaintiff] was complying with the terms of his probation, they were performing a quasi-judicial function. To the extent defendants were performing that function at the direction of the judge, they are entitled to quasi-judicial immunity. All of the same considerations that would apply to the judge apply to the probation officer. "The prospect of damage liability under section 1983 would seriously erode the officer's ability to carry out his independent fact-finding function and thereby impair the sentencing judge's ability to carry out his judicial duties." *Demoran v. Witt*, 781 F.2d 155, 157 (9th Cir.1986) (finding absolute immunity for probation officers).

*Id.* at *5.

Similarly, in *Loggins v. Franklin County, Ohio*, 218 F. App'x 466, 476 (6th Cir. 2007), the Sixth Circuit, relying on *Balas*, held that a probation officer was entitled to quasi-judicial immunity where the officer allegedly "falsely advised" the judge that an arrest warrant had been issued when it was actually forthcoming. The court emphasized that "[a]t all relevant times, [the probation officer] was working for [the judge] in the context of a judicial proceeding, unlike, for example, . . . an investigating officer." *Id.* at 476.

Plaintiffs urge the court not to rely on the unpublished cases of *Balas* and *Loggins* and argue that Schriner's "act of attempting to force Doe 2 from his home was not a judicial function." (ECF No. 77, PageID. 1017.) The court disagrees and is persuaded by the Sixth Circuit's reasoning in *Balas*, *Loggins*, and *Faber* that Schriner is

12

entitled to quasi-judicial immunity based on the facts of this case.

Schriner contacted Doe 2 for the express purpose of ensuring that Doe 2 complied with the terms of his probation—established by court order—which prevented him from residing within a student safety zone. (ECF No. 66-3, PageID.535.) That Schriner directly contacted Doe 2 rather than first informing the presiding judge of Doe 2's violation is not material to his entitlement to immunity. The court order establishing the terms of Doe 2's probation served as the explicit "direction of the judge" for Schriner to ensure that Doe 2 complied with SORA's student safety zone provision because Schriner would have no authority to act but for that order. Accordingly, the court will grant Schriner's motion for summary judgment on the individual capacity claim because he is entitled to quasi-judicial immunity.

### 3. Qualified Immunity (Curran, Nowicki, and Puzon)

Plaintiffs argue that Defendants Nowicki and Puzon violated Doe 1's due process rights by failing to advise Doe 1 about the appropriate registration requirements in light of the *Does I r*uling. (ECF No. 78, PageID.1056.) Plaintiffs also argue that Curran violated Doe 1's rights by threatening to prosecute him for living in a student safety zone. (*Id.* at 1047.) Defendants respond that they are entitled to qualified immunity because Doe 1's rights were not clearly established at the time of the alleged violation. (ECF No. 83, PageID.1157.)

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have

known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In analyzing a party's entitlement to qualified immunity, the Supreme Court has noted that "[i]f no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

To defeat Defendants' claim of qualified immunity, then, Plaintiffs must show that Defendants violated a clearly established constitutional right at the time of the incident in question. *Godawa v. Byrd*, 798 F.3d 457, 467 (6th Cir. 2015) (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). Courts must "examine the asserted right at a relatively high level of specificity." *Bletz v. Gribble*, 641 F.3d 743, 750 (6th Cir. 2011) (internal citation omitted). That is, the court must determine that "'the right's contours were sufficiently definite that any reasonable official in [the defendants'] shoes would have understood that he was violating it,' meaning that 'existing precedent . . . placed the statutory or constitutional question beyond debate.'" *City of S.F. v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) (quoting *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014)); *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2015)). The requirement that a right is clearly established "is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). "'[O]fficials can still be on notice that their conduct violates established

law even in novel factual circumstances.'" *Jackson v. City of Cleveland*, 925 F.3d 793, 823 (6th Cir. 2019) (quoting *Hope*, 536 U.S. at 739). Put another way, a constitutional right is clearly established when the unlawfulness of an officer's conduct would be "readily apparent to the officer, notwithstanding the lack of fact-specific case law." *United States v. Morris*, 494 F. App'x 574, 579 (6th Cir. 2012) (quoting *Fils v. City of Aventura*, 647 F.3d 1272, 1291 (11th Cir. 2011)).

In *Does I*, this court held that the provisions of SORA which established student safety zones and strict liability for violations were unconditionally vague in violation of the Due Process Clause of the Fourteenth Amendment. On appeal, the Sixth Circuit did not address these rulings but rather reversed for reasons related to the plaintiffs' *ex post facto* claim. This court's earlier ruling on the vagueness challenges to SORA—which are the same challenges lodged by Plaintiffs in this case—were not disturbed by the Sixth Circuit's rulings in *Does I*. However, this court's rulings in *Does I* does not mean that Plaintiffs' rights were clearly established because:

> A single district court opinion is not enough to pronounce a right is clearly established for purposes of qualified immunity. While a district court opinion may be *persuasive* in showing there is a clearly established right—perhaps by exposing a trend in non-precedential case law—it is not *controlling* on its own.

*Hall v. Sweet*, 666 F. App'x 469, 481 (6th Cir. 2016). The Second, Seventh, Ninth, Tenth, and Eleventh Circuits have adopted a similar standard regarding when a right becomes "clearly established." *Id.* at 481 n.9 (citing *Estate of Escobedo v. Bender*, 600 F.3d 770, 781 (7th Cir. 2010); *Cortez v. McCauley*, 478 F.3d 1108, 1114–15 (10th Cir. 2007); *Moore v. Pederson*, 806 F.3d 1036, 1047 (11th Cir. 2015); *Pabon v. Wright*, 459

15

F.3d 241, 255 (2d Cir. 2006); *Tarabochia v. Adkins*, 766 F.3d 1115, 1125 (9th Cir. 2014)).

Until this court's ruling in *Does I*, SORA was a validly enacted and constitutional statute that Defendants were charged with enforcing. The *Does I* ruling alone does not make Plaintiffs' rights "clearly established." *Hall*, 666 F. App'x at 481. Moreover, Plaintiffs' own brief acknowledges the ensuing confusion regarding the constitutionality of SORA in light of the Sixth Circuit's decision. (ECF No. 78, PageID.1058.) In fact, this case, as well as the *Does II* certified class action, demonstrate that the contours of Plaintiffs' asserted rights are anything but clear. Even assuming the truth of Plaintiffs' version of events, Defendants are entitled to qualified immunity because Plaintiffs' rights were not clearly established based on the single ruling of this court in *Does I*. The court will grant Defendants' motion for summary judgment on the individual capacity claims.[2]

### B. Official Capacity Claims

In response to Defendants' motions for summary judgment, Plaintiffs clarify that they seek only injunctive and declaratory relief for their claims against Defendants in their official capacities and do not seek money damages in the official capacity claims. (ECF No. 77, PageID.1025; ECF No. 78, PageID.1060.) Plaintiffs articulate the parameters of their requested injunctive and declaratory relief in the amended complaint:

> [J]udgment, pursuant to 28 U.S.C. §§ 2201-2202, declaring that SORA

---

[2] This same analysis applies to Schriner. In the alternative to quasi-judicial immunity, Schriner is also entitled to qualified immunity because Plaintiffs suffered no violation of any "clearly established" right.

> 2011 is void under the Due Process Clause of the Fourteenth Amendment due to vagueness, impossibility, and wrongful imposition of strict liability . . . [and the issuance of] a preliminary and permanent injunction restraining Defendants from enforcing against Plaintiffs those provisions of SORA 2011 that are unconstitutional, including but not limited to an injunction prohibiting any Defendants or other law enforcement officials from instituting criminal prosecution against Plaintiffs under SORA.

(ECF No. 32, PageID.217.) Plaintiffs move to receive this relief in their partial motion for summary judgment. (ECF No. 70.)

Plaintiffs' requested relief is the precise remedy sought by the certified class in *Does II. See* Second Am. Compl. at 43–45, *Does II*, No. 16-13137 (June 28, 2018) (ECF No. 34, PageID.387–89.) Plaintiffs do not dispute their membership in the mandatory *Does II* class nor do they argue that their claims for declaratory or injunctive relief differ from those of the certified class. (ECF No. 79, PageID.1081–82.) As members of the certified Rule 23(b)(2) class in *Does II*, Plaintiffs' claims for declaratory and injunctive relief are subsumed in the class action claims. Plaintiffs have no right to separately litigate their claims for injunctive relief because doing so would create the potential for inconsistent judgments. *See Walmart-Stores, Inc. v. Dukes*, 564 U.S. 338, 361 (2011). Plaintiffs do not contest this fact either but ask the court to deny Defendants' motions for summary judgment motion in order to preserve the preliminary injunction currently in place as to Doe 1, which the court entered prior to the *Does II* class certification.

On December 17, 2019, the court held a joint status conference with the parties of this case and the *Does II* case. During the conference, the court explained that it intended to preserve the preliminary injunction until the resolution of *Does II*. The court

has since entered a joint, stipulated order to preserve the injunction. (ECF No. 90.) Because Plaintiffs cannot obtain additional or different relief on their claims from the *Does II* class, the court will deny without prejudice Plaintiffs' motion for summary judgment. The court will also deny without prejudice Defendants' motions on the official capacity claims because the court will reach the merits of Plaintiffs' requested injunctive relief in *Does II*. The preliminary injunction, however, will remain in effect until the conclusion of *Does II* and separate order of this court.

## IV. CONCLUSION

For the reasons explained above, Defendants Curran, Schriner, Puzon, and Nowicki are entitled to immunity on Plaintiffs' individual liability claims. Plaintiffs seek declaratory and injunctive relief, not money damages, in their official capacity claims against all Defendants. This is the precise remedy sought by the certified *Does II* class. The court cannot enter separate injunctive relief for Plaintiffs because their claim for injunctive relief is subsumed by the *Does II* class. Therefore, the court will deny without prejudice Defendants' motions for summary judgment as they relate to the official capacity claim and will also deny without prejudice Plaintiffs' motion for summary judgment. This ruling disposes of all the claims for money damages and leaves the sole issue in this case the claim for injunctive and declaratory relief brought against

Defendants in their official capacity.[3]

The court will decide the issue of injunctive relief on the merits in *Does II*, and the instant proceedings will be stayed until the court issues that decision in *Does II*. The preliminary injunctive currently in place—which enjoins Defendants from prosecuting Doe 1 for living within a student safety zone—will remain in full force and effect until the resolution of *Does II* and separate order of this court. Accordingly,

IT IS ORDERED that Defendant Snyder and Etue's motion for summary judgment (ECF No. 65) is DENIED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that Defendant Schriner's motion for summary judgment (ECF No. 66) is GRANTED IN PART as to the individual capacity claim. It is DENIED WITHOUT PREJUDICE as to the official capacity claim.

IT IS FURTHER ORDERED that Defendants Curran, Nowicki, and Puzon's motion for summary judgment (ECF No. 68) is GRANTED IN PART as to the individual capacity claim. It is DENIED WITHOUT PREJUDICE as to the official capacity claim.

IT IS FURTHER ORDERED that Plaintiffs' motion for partial summary judgment (ECF No. 70) is DENIED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that this case is STAYED pending the resolution of

---

[3] It appears to the court that Defendants Curran, Nowicki, Puzon, and Schriner may not be proper defendants for Plaintiffs' official capacity claims. *See Essex v. Cty. of Livingston*, 518 F. App'x 351, 354 (6th Cir. 2013) (citing *Cady v. Arenac Cnty.*, 574 F.3d 334, 342 (6th Cir. 2009)) ("[A]n official-capacity claim is merely another name for a claim against the municipality."). The court invites, but does not require, the parties to submit a proposed stipulated order addressing the advisability of Defendants' continued involvement in this case in light of the court's denial of Plaintiffs' individual capacity claims.

*Does II*.

FINALLY, IT IS ORDERED that the preliminary injunction as to Doe 1 (ECF No. 27) REMAINS IN EFFECT until the conclusion of the *Does II* and separate order of the court.

                                      s/Robert H. Cleland            /
                                      ROBERT H. CLELAND
                                      UNITED STATES DISTRICT JUDGE

Dated: January 10, 2020

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, January 10, 2020, by electronic and/or ordinary mail.

                                      s/Lisa Wagner               /
                                      Case Manager and Deputy Clerk
                                      (810) 292-6522

S:\Cleland\Cleland\HEK\Civil\18-11935.CURRAN.sora.msj.qualified.immunity.HEK.RHC.2.docx