UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN DOE and JOHN DOE 2,

                Plaintiffs,

v.

BRENDAN P. CURRAN, et al.,

                Defendants.

_____/

Civil Action. No. 18-11935

Robert H. Cleland
United States District Judge

David R. Grand
United States Magistrate Judge

## REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART PLAINTIFFS' RENEWED MOTION FOR ATTORNEYS' FEES AND COSTS (ECF No. 108)

Before the Court for a Report and Recommendation is a Renewed Motion for Attorneys' Fees and Costs (the "Fee Motion") filed by plaintiffs John Doe ("Doe 1") and John Doe 2 ("Doe 2") (collectively, "Does 1 & 2") in which they seek to recover a total of $52,385 in attorneys' fees and costs against defendants Richard Snyder, Michigan's former Governor ("Snyder"), Kriste Etue, Michigan State Police Director ("Etue"), and Kevin Schriner, a Michigan Department of Corrections Probation Officer ("Schriner") (collectively, the "State Defendants").[1]  (ECF No. 108).  The motion was fully briefed (ECF Nos. 111, 113), and the Court heard oral argument on March 21, 2022.  Following

---

[1] Does 1 & 2's Fee Motion also sought an award of attorneys' fees and costs in the amount of $42,772 against the "County Defendants," comprised of Brendan P. Curran, Otsego County Prosecuting Attorney, Matthew Nowicki, Otsego County Sheriff, and Ron Puzon, former Otsego County Deputy.  However, Does 1 & 2 and the County Defendants entered into stipulation to resolve the issues between them with respect to the Fee Motion.  (ECF No. 118).  Accordingly, the Court will only address Does 1 & 2's Fee Motion as it relates to the State Defendants.

the hearing, the parties attempted, to no avail, to reach a mutually-agreeable resolution of the Fee Motion.  For the reasons explained below, Does 1 & 2's Fee Motion should be granted in part and denied in part, with Doe 1 receiving an award of attorneys' fees and costs of $6,045.00 against defendants Snyder and Etue only, and Doe 2 receiving no award.

## I.    <u>Background</u>

This case involves a challenge by Does 1 & 2 to the "school safety zone" provision (the "SSZ Provision") of Michigan's Sex Offender Registration Act, M.C.L. § 28.721 et. seq. ("SORA"), that prohibited anyone subject to SORA from residing "within 1,000 feet" of a school.  Mich. Comp. Laws §§ 28.734(1)(a)–(b), 28.735(1).  To fully understand the issues confronting the Court in this case, it is necessary to dive in and out of two somewhat related cases that also dealt with challenges to SORA.

### a.    *Does I*

In *Does v. Snyder*, No. 12-11194 (E.D. Mich.) ("*Does I*"), the Honorable Robert H. Cleland entered an order declaring that SORA's student safety zone provision and strict liability regime violated the Due Process Clause.  (*Does I*, ECF No. 103, PageID. 5890–95, 5909.)  On appeal, the Sixth Circuit declined to address these rulings, but instead held that SORA imposes "punishment," such that its retroactive application violates the United States Constitution's Ex Post Facto Clause.  *Does #1-5 v. Snyder*, 834 F.3d 696, 706 (6th Cir. 2016), *cert. denied*, 138 S. Ct. 55 (2017).

### b.    *Does II*

On August 30, 2016, before the Supreme Court's denial of cert. in *Does I*, a class action was filed in this Court "on behalf of individuals criminally convicted of offenses

that subject them to registration under [SORA] against [Michigan's then-governor and Michigan State Police Director] for violations of [their] constitutional rights to be free from laws that impair fundamental rights to 1) travel; 2) work; 3) raise children; 4) have housing; . . . without being narrowly tailored to meet a compelling state interest." *Doe v. Snyder*, No. 16-13137 (E.D. Mich.) ("*Does II*"). *Does II* was also assigned to Judge Cleland. One of the specific SORA provisions challenged in *Does II* was its SSZ. (*Does II*, ECF No. 1). The *Does II* defendants moved to dismiss the complaint, and on April 21, 2017, Judge Cleland administratively stayed the case pending the Supreme Court's resolution of the petition for cert. in *Does I*. (*Id.*, ECF Nos. 12, 18). The Supreme Court denied cert. in *Does I* on October 2, 2017, and Judge Cleland reopened *Does II* on November 13, 2017. (*Id.*, ECF No. 21).

The parties then stipulated to the filing of an amended class action complaint and to the denial of the defendants' motion to dismiss as moot. (*Id.*, ECF No. 29). An amended class action complaint was filed on June 28, 2018. (*Id.*, ECF No. 34). That complaint proposed to certify two classes: (1) "a class of Michigan registrants, all of whom seek to have the benefits of this Court's 2015 forward-looking decisions [in *Does I*] applied to them (the 'primary class')"; and "an 'ex post facto subclass' comprised of individuals who committed the offense or offenses requiring registration before April 12, 2011, all of whom seek to have the benefits of the Sixth Circuit's backward-looking decision [in *Does I*] applied to them." On September 11, 2018, the parties entered a stipulated order for class certification, that certified the following classes (which were slightly modified from the ones proposed in the complaint):

3

- A "primary class," defined as all people who are or will be subject to registration under Michigan's Sex Offenders Registration Act.

- A "pre-2006 ex post facto subclass," defined as members of the primary class who committed their offense or offenses requiring registration before January 1, 2006, and who have committed no registrable offense since.

- A "2006-2011 ex post facto subclass," defined as members of the primary class who committed their offense or offenses requiring registration on or after January 1, 2006, but before April 12, 2011, and who have committed no registrable offense since.

(*Does II*, ECF No. 46, PageID.693).

On July 12, 2018, the *Does II* plaintiffs filed a motion for partial summary judgment, asking the Court to declare that the SORA provisions, which the Sixth Circuit found to constitute "punishment," "cannot be enforced retroactively against registrants who committed their registrable offense before the effective dates of those amendments," and "permanently enjoin the defendants from enforcing the [SORA provisions] against the [lead class plaintiffs] and members of the ex post facto subclass . . ." (ECF No. 40). That motion was never decided on the merits, however, because on May 23, 2019, the parties entered into a stipulated order agreeing that "the Michigan Legislature should be given a further opportunity to revise the statute before this Court addresses the Plaintiffs' request for injunctive relief on the ex post facto claim, or the parties litigate the other claims . . ." (*Id.*, ECF No. 55). There were many more developments in *Does II* following entry of the parties' stipulation, but to best understand the present issues, the Court needs to first jump back to the instant case.

4

c.     *The Instant Case*

On June 19, 2018, *i.e.*, just a week or so before the complaint in *Does II* was filed, Doe 1 filed his complaint in this case.  (ECF No. 1).  The case was assigned to the Honorable David M. Lawson.  In short, Doe 1 lived in Otsego County and was subject to SORA due to a 2008 juvenile conviction.  He had purchased a home in December 2017 that was arguably (depending on the measuring tool used) within a SSZ.  In January 2018, the Otsego County Prosecutor advised Doe 1 in writing that if he did not cease living in the home by July 4, 2018, he "should expect to be prosecuted . . ." (ECF No. 1-1).  Rather than move homes, on June 19, 2018, Doe 1 filed the instant action.  On July 3, 2018, Doe 1 filed a motion for temporary restraining order and preliminary injunction.  (ECF No. 6).  Judge Lawson denied the temporary restraining order (ECF No 7), but, on July 12, 2018, he granted a preliminary injunction in Doe 1's favor (ECF No. 27).  Importantly, the injunction applied not only to the County Defendants, but also to defendants Snyder and Etue.  (*Id.*, PageID.127).  Specifically, Judge Lawson held, "It is further **ORDERED** that defendants Brendan P. Curran, Matthew Nowicki, Ron Puzon, Richard Snyder, and Kriste Etue, and all those in active concert or participation with them who receive actual notice of this injunctive order, are **RESTRAINED, ENJOINED, AND PROHIBITED** from initiating any prosecution of [Doe 1] under the [SORA's SSZ] provisions . . ." (*Id.*). Defendants then answered the complaint and discovery commenced.

Like Doe 1, Doe 2 was subject to SORA.  In August 2018, Doe 2 had moved to Genesee County, and his probation agent, defendant Schriner, contended that Doe 2's new home was within an SSZ.  Schriner thus advised Doe 2 that unless he moved, a probation

5

violation would be issued against him.  On September 24, 2018, an amended complaint was filed in this case which added Doe 2 as a plaintiff and Schriner as a defendant.  (ECF No. 32).  Doe 2 then moved for a preliminary injunction.  (ECF No. 33).  However, on September 27, 2018, the Genesee County Circuit Court discharged Doe 2's probation, so on October 1, 2018, Doe 2 withdrew his motion, without prejudice, should he continue to face a threat of prosecution from the Michigan State Police.  (ECF Nos. 40, 42).  Doe 2 contends that his probation was terminated only because Schriner recommended it, and that but for his addition as a plaintiff to this action he "would have faced criminal penalty or been forced to move."  (ECF No. 108, PageID.1497, 1501).

The State Defendants then moved to "drop" Doe 2 from the instant action, arguing that his "claim against Schriner does not 'aris[e] out of the same transaction, occurrence, or series of transactions or occurrences" as Doe's original claim, and thus "should not be joined in this action."  (ECF No. 43).  Judge Lawson denied that motion.  (ECF No. 53).  Discovery then proceeded, though Does 1 & 2 contend they attempted, with only limited success, to minimize the need for any discovery by proposing to the Defendants that they stipulate to certain facts.  (ECF No. 108, PageID.1502-04).

The parties then filed cross motions for summary judgment.  (ECF Nos. 65, 66, 68, 70).  Does 1 & 2 contend that, for the first time, the Defendants argued that they "were not entitled to equitable relief outside of the certified class in Does II."  (ECF No. 108, PageID.1504).  At the time, this case was still assigned to Judge Lawson.  However, on November 26, 2019, while the summary judgment motions were still pending, he entered

an order transferring the case to Judge Cleland as "a companion or related case" to *Does*

*II*, explaining:

> The case came before the Court on several motions for summary judgment and partial summary judgment, which the Court scheduled for hearing on November 26, 2019.  However, the parties brought to the Court's attention another case pending in this district — [*Does II*] — on the docket of the Honorable Robert H. Cleland, in which the plaintiffs there raised the same constitutional issues concerning the same statute.
>
> Judge Cleland has certified that case as a mandatory class action under Federal Rule of Civil Procedure 23(b)(2) on the questions of declaratory and injunctive relief.  The class is defined as "all people who are or will be subject to registration under Michigan's Sex Offenders Registration Act," which includes plaintiffs John Does 1 and 2 in this case.
>
> The plaintiffs here, therefore, are members of the class in an already-pending case before the Court.  The plaintiffs in this case cannot opt out of the class.  [ ].  "The key to the (b)(2) class is the 'indivisible nature of the injunctive or declaratory remedy warranted — the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them."  [].  Maintaining both cases, therefore, would be imprudent, as the plaintiffs effectively would be pursuing two lawsuits simultaneously seeking the same core relief before two different judges.  The danger of inconsistent outcomes alone calls for transferring the case to the docket of the judge with the earlier-filed case for further proceedings.
>
> The Court notes that the plaintiffs here have also sought monetary relief, and the defendants have raised individual-capacity defenses, including qualified immunity.  The Court also issued a preliminary injunction to preserve the status quo while the case is pending, to prevent one of the defendants, a local prosecutor, from charging the plaintiff with a SORA violation before the constitutional question is resolved.  The transfer is not intended to affect the status of the preliminary injunction, nor will it prejudice any of the defendants' pleaded defenses.

(ECF No. 85).

On January 10, 2020, Judge Cleland entered an order that made three principal rulings:

- Granting, based on various immunity doctrines, the Defendants' summary judgment motions on the individual capacity claims of Does 1 & 2. As these were the only claims for which Does 1 & 2 sought money damages, this ruling meant that neither one would recover any money damages as a result of bringing this action.

- Denying without prejudice the parties' motions as they relate to the official capacity claims. This was appropriate because the declaratory relief Does 1 & 2 were seeking as to SORA's unconstitutionality, "is the precise remedy sought by the certified class in Does II. . . . [Does 1 & 2] have no right to separately litigate their claims for injunctive relief because doing so would create the potential for inconsistent judgments. . . . [Does 1 & 2] cannot obtain additional or different relief on their claims from the *Does II* class . . . the court will reach the merits of [Does 1 & 2's] requested injunctive relief in Does II."

- Maintaining the preliminary injunction issued in favor of Doe "until the conclusion of *Does II* and separate order of this court."

(ECF No. 91).

### d.    Back to Does II

Following Judge Cleland's ruling on the summary judgment motions in this case, the focus returned to the *Does II* case. On February 14, 2020, Judge Cleland entered an order granting summary judgment in favor of the class plaintiffs – which although always including Does 1 & 2, now included them explicitly. (*Does II*, ECF No. 84) (the "*Does II* SJ/Dec Order"). Specifically, Judge Cleland ruled that he would "enter permanent injunctive relief enjoining Defendants and their agents from enforcing certain provisions of SORA against the primary class and enjoining Defendants and their agents from enforcing the entirety of SORA against registrants whose offenses occurred prior to the

8

enactment of the 2011 amendments to SORA (i.e. members of the ex post facto subclasses)." (*Id.*, PageID.1777). Judge Cleland also specifically declared that SORA's "prohibition on residing within a student safety zone" – the provision subject to the preliminary injunction in this case – was "unconstitutional." (*Id.*, PageID.1802). Judge Cleland reserved entering a judgment in *Does II* to allow the Michigan Legislature an opportunity to draft a new statute and ensure adequate notice to registrants, prosecutors, and law enforcement. (*Id.*, PageID.1806-07).

After a delay caused by the COVID-19 pandemic, on December 31, 2020, Governor Whitmer signed new SORA legislation into law, effective March 24, 2021. (*Id.*, ECF No. 105). Then, on August 26, 2021, Judge Cleland entered a final judgment in *Does II*, effectuating his earlier rulings. (*Id.*, ECF No. 126). The final judgment permanently enjoined enforcement of any provision in the pre-2021 SORA against class members, including Does 1 & 2, for conduct that occurred before March 24, 2021. (*Id.*).

     *e.*    *Final Judgment in the Instant Case and Doe 1 & 2's Fee Motion*

Because Does 1 & 2 were members of the class in *Does II*, and thus covered by the final judgment entered in that case, their claims in this case, which had sought the same relief provided in *Does II*, were moot. Accordingly, on December 29, 2021, Judge Cleland entered a final judgment based precisely on that logic:

> [Does 1 & 2] do not dispute their membership in the mandatory *Does II* class nor do they argue that their claims for declaratory or injunctive relief differ from those of the certified class. [] As members of the certified Rule 23(b)(2) class in *Does II*, [Does 1 & 2's] claims for declaratory and injunctive relief are subsumed in the class action claims. [Does 1 & 2] have no right to separately litigate their claims for

injunctive relief because doing so would create the potential for inconsistent judgments." []

* * *

(ECF No. 107, PageID.1491).

The judgment in this case then discussed each aspect of the *Does II* judgment, explaining that it applied to members of the various classes in that case, "including [Does 1 & 2]," and thus rendered the claims of Does 1 & 2 "moot":

> [This] court cannot enter separate injunctive relief for Plaintiffs because their claim for injunctive relief is subsumed by the Does II class. [] As a result of the relief granted in Does II and the legislative changes to SORA, [Does 1 & 2's] claims for injunctive and declaratory relief against Defendants in their official capacity are moot.

(*Id.*, PageID.1492-93).

The judgment concluded, "IT IS ORDERED that final judgment is entered in favor of Defendants. All of [Does 1 & 2's] individual and official capacity claims against all Defendants are DISMISSED WITH PREJUDICE." (*Id.*, PageID.1494).

Following entry of the final judgment in this case, Does 1 & 2 filed the instant Fee Motion on January 12, 2022, arguing that they are the "prevailing parties" in this action brought under 42 U.S.C. § 1983, and that as such, are entitled to an award of reasonable attorneys' fees and costs under 42 U.S.C. § 1988(b). (ECF No. 108).[2] They seek a total award of $52,385 against the State Defendants, and they provided a detailed log of their time and expenses. (ECF No. 98). The State Defendants oppose the Fee Petition, asserting

---

[2] Does 1 & 2 had originally filed a similar fee motion on February 16, 2021, but that motion was denied without prejudice. (ECF Nos. 93, 105). Does 1 & 2 did not re-file most of the exhibits, but rather refer back to the exhibits supporting their initial fee motion. The Court will do the same.

the following reasons why the Court should either outright deny the motion or award an

amount considerably less than that sought by Does 1 & 2:

- Does 1 & 2 were not "prevailing parties" *in this case*, and thus are not entitled to any fee award.

- Any fee award should be limited to time spent securing the preliminary injunction in this case, which applied only to Doe 1 and not Doe 2.

- Relatedly, because Schriner is a defendant solely with respect to Doe 2's claims, there is no basis for awarding any fees against him.

- The hours expended by counsel and the rates they are seeking are excessive and not "reasonable".

(ECF No. 111).

For the reasons discussed below, the Court finds that Doe 1 is a "prevailing party,"

but that he is only entitled to an award of reasonable fees for work performed and costs

incurred in connection with securing the preliminary injunction in this case, and that that

award may only be imposed against defendants Snyder and Etue.  The Court also finds that

Doe 2 is not a prevailing party, and thus is not entitled to any award.  Finally, the Court

finds that counsel's hourly rates are reasonable and that their salient time entries are not

excessive.

## II.  <u>Applicable Standards</u>

"In the United States, parties are ordinarily required to bear their own attorney's

fees—the prevailing party is not entitled to collect from the loser.  []  Under this 'American

Rule,' we follow 'a general practice of not awarding fees to a prevailing party absent

explicit statutory authority.'  []  Congress, however, has authorized the award of attorney's

fees to the 'prevailing party' in numerous statutes," including 42 U.S.C. § 1988(b), which

applies to cases, like this one, brought under 42 U.S.C. § 1983. *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 602 (2001) (citations omitted). Here, Does 1 & 2 seek an award of attorney's fees under 42 U.S.C. § 1988(b), which provides that "the prevailing party" in "any action or proceeding to enforce a provision of [Section 1983], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . ."

In another similar case involving a challenge to Michigan's SORA, the Honorable Mark A. Goldsmith recently discussed the standards that apply to motions for attorney fees under 42 U.S.C. § 1988(b), particularly where the principal relief received in the action was a preliminary injunction:

> For civil rights actions brought under 42 U.S.C. § 1983, courts are authorized to award the prevailing party reasonable attorney fees as part of the costs. 42 U.S.C. § 1988(b). "[T]o be a prevailing party, the plaintiff must obtain a 'material' change in the legal relationship between [her]self and the defendant." *McQueary v. Conway*, 614 F.3d 591, 598 (6th Cir. 2010) (quoting *Sole v. Wyner*, 551 U.S. 74, 82, 127 S.Ct. 2188, 167 L.Ed.2d 1069 (2007)). However, with respect to preliminary injunctions, the "preliminary" nature of the relief will generally counsel against fees. *Id.* at 601. Determining whether the winner of a preliminary injunction is a prevailing party is, therefore, a contextual and case-specific inquiry. *Id.*

> For example, "[p]revailing party status ... does not attend achievement of a preliminary injunction that is reversed, dissolved, or otherwise undone by the final decision in the same case." *Sole*, 551 U.S. at 83, 127 S.Ct. 2188. In other words, a plaintiff who "has won a battle but lost the war," is not entitled to fees. *Id.* at 86, 127 S.Ct. 2188 (citation and internal marks omitted). However, prevailing party status may attend achievement of a preliminary injunction where the injunction (1) caused a change, (2) the change directly benefitted the plaintiff, and (3) the change endured. *Miller v. Caudill*, —— F.3d ——, ——, 2019 WL 3979593, *3 (6th Cir. Aug. 23, 2019) (citing *McQueary*, 614 F.3d at 597-599). When a plaintiff "receives everything it asked for in the

lawsuit, and all that moots the case is court-ordered success and the passage of time," attorney fees may be warranted. *McQueary*, 614 F.3d at 599. By way of illustration, where "protesters seek an injunction to exercise their First Amendment rights at a specific time and place — say to demonstrate at a Saturday parade—a preliminary injunction will get them all the court-ordered relief they need and the end of the parade will moot the case." *Id.*[3]

*Roe v. Snyder*, No. 16-13353, 2019 WL 4254083, at *2-3 (E.D. Mich. Sept. 9, 2019).

## III.   <u>Discussion</u>

> ### a.   *Doe 1's Successful Motion for Preliminary Injunction Materially Changed His Relationship Vis-à-Vis the Defendants*

Prior to Doe 1 commencing this action, he had been advised by the local prosecutor that he was in violation of SORA's SSZ, and "should expect to be prosecuted" if he did not move from his residence. (ECF No. 1-1). Thus, at the time he filed this action, Doe 1 was facing a specific threat of criminal prosecution under Michigan's SORA by the local prosecutor. The "enduring relief" question aside, Doe 1 clearly obtained a "material change" in his relationship to the Defendants when he secured the preliminary injunction enjoining the County Defendants and defendants Snyder and Etue "from initiating any prosecution of [Doe 1] under the [SORA's SSZ] provisions . . ." (ECF No. 27, PageID.127). *See Roe*, 2019 WL 4254083, at *4 ("before the injunction, the [] Prosecutor could prosecute Roe under SORA for maintaining her employment. After the injunction, Roe could continue her employment without fear of prosecution. The relief, even though

---

[3] As Judge Goldsmith noted, though, if, after the parade takes place, it is determined on the merits that the preliminary injunction was issued in error, the plaintiffs would *not* be prevailing parties, and would *not* be entitled to an award of fees. *Sole*, 551 U.S. at 86 ("a plaintiff who gains a preliminary injunction does not qualify for an award of counsel fees under § 1988(b) if the merits of the case are ultimately decided against her.").

preliminary in nature, materially changed the [] Prosecutor's behavior toward Roe to her benefit.").

> b.  *Doe 1 is a "Prevailing Party" at Least with Respect to Securing the Preliminary Injunction*

In their response brief, Defendants assert, "[g]iven the legal developments that occurred outside this lawsuit, there is no basis to characterize [Doe 1] as 'prevailing.' . . . [s]imply put, [Doe 1] lost this case." (ECF No. 111, PageID.1571). The Court concurs that the "legal developments that occurred outside this lawsuit" – *i.e.*, those in *Does II* – provide important "context" for its consideration of the "prevailing party" issue. *McQueary*, 614 F.3d at 601. However, viewing the facts of the instant case in conjunction with the developments in *Does II* makes clear that, at least with respect to securing the preliminary injunction in this case, Doe 1 is a prevailing party.

Contrary to the State Defendants' assertion, by no stretch of the imagination can Doe 1 be said to have "won a battle but lost a war." *Sole*, 551 U.S. at 86. When Doe 1 brought this case, he was facing the threat of criminal prosecution if he did not move from his residence. He obtained a preliminary injunction that – throughout literally the entirety of this case up until the moment the final judgment was entered – prohibited any of the Defendants from following through on that threat. The entry of the final judgment in this case may have terminated the preliminary injunction, but it had no actual effect on the parties' relationship because the exact same relief – this time in permanent form – had been granted to Doe 1 via his membership in the class in *Does II*.

14

Importantly, that relief was not the result of the State Defendants' voluntary agreement, but rather was the result of the permanent injunction imposed by the Court when Judge Cleland granted the *Does II* plaintiffs' summary judgment motion and motion for declaratory and injunctive relief.  (*Does II*, ECF No. 84).  Specifically, on February 14, 2020, Judge Cleland entered the *Does II* SJ/Dec Order granting summary judgment in favor of the *Does II* class plaintiffs – which although always including Does 1 & 2, now included them explicitly.  (*Id.*).  Judge Cleland held that the plaintiffs were entitled to "permanent injunctive relief enjoining Defendants and their agents from enforcing certain provisions of SORA against the primary class and enjoining Defendants and their agents from enforcing the entirety of SORA against registrants whose offenses occurred prior to the enactment of the 2011 amendments to SORA (i.e. members of the ex post facto subclasses)."  (*Id.*, PageID.1777).[4]  Judge Cleland also specifically declared that SORA's "prohibition on residing within a student safety zone" – the provision subject to the preliminary injunction in this case – was "unconstitutional."  (*Id.*, PageID.1802).

That the relief here was court-ordered clearly distinguishes this case from the ones relied on by the State Defendants in which a party was deemed not to be a "prevailing party" because the relief it obtained was due to the other side's voluntary action without compulsion by the Court.  (ECF No. 111, PageID.1586) (citing *McQueary v. Conway*, 508

---

[4] Judge Cleland reserved entering a final judgment in *Does II* to allow the Michigan Legislature an opportunity to draft a new statute and ensure adequate notice to registrants, prosecutors, and law enforcement.  (*Id.*, PageID.1806-07).  But that hardly detracts from the fact that the legal issue of the enforceability of the SORA provisions in question was decided on the merits in favor of the class plaintiffs, including Does 1 & 2.

F. App'x 552, 522-24 (6th Cir. 2012) (upholding denial of fee petition because "the state legislature's 'voluntary conduct'—its repeal of the [statute in issue]—does not by itself 'serve as the basis for an award of attorney's fees.'") and *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't. of Health & Human Res.*, 532 U.S. 598, 610 (2001) (rejecting "catalyst theory" as a basis for awarding attorney fees)).

In sum, viewing the facts and procedural rulings in their proper context makes clear that the preliminary injunction granted to Doe 1 in this case became subsumed within the permanent injunction in *Does II*.  (*Does II*, ECF No. 84, PageID.1777, 1802).  Indeed, when Judge Cleland addressed the immunity issues in this case, he explained that he was "continuing [the] preliminary injunction" in this case "because [Does 1 & 2's] claim for injunctive relief is subsumed by the Does II class," and would be "decide[d] . . . on the merits in *Does II*."  (ECF No. 91, PageID.1204, 1221-22; *see also* ECF No. 107, PageID.1491 (noting that Doe 1's claims "are subsumed in the class action claims" in *Does II*)).  As such, Doe 1's preliminary injunction became "enduring," court-ordered relief that materially benefitted him by changing his relationship vis-à-vis the Defendants.  Thus, at least with respect to the work performed by Doe 1's counsel in securing a preliminary injunction, he is a "prevailing party" entitled to an award of reasonable attorney fees and costs under 42 U.S.C. § 1988(b).

    c.    *Doe 1 is Only Entitled to an Award of Fees for Work Performed in Connection with Securing the Preliminary Injunction*

In their response brief, Defendants argue, "[i]f attorneys' fees are awarded, this Court should limit any award to fees related to the preliminary injunction regarding John Doe 1." (ECF No. 111, PageID.1589). The Court agrees.

The preliminary injunction in this case was entered on July 12, 2018. (ECF No. 27). As explained above, Doe 1 is a "prevailing party" because that preliminary injunction was essentially converted into a permanent one when Judge Cleland entered the *Does II* SJ/Dec Order. Doe 1 seems to admit that his counsel's additional work in this case did not have any *direct* impact on securing the *Does II* SJ/Dec Order. At most Doe 1 argues that he "could not simply get the injunctive relief and then fail to prosecute [his] case. Had [he] done so, the case would have been dismissed and the injunctive relief lost. In order to make the relief enduring, [Doe 1 was] required to continue to make [his] case." (ECF No. 108, PageID.1516). But Doe 1 could have achieved this same result – without incurring any of the additional fees – by requesting a stay pending the resolution of *Does II*, which is exactly what Judge Cleland ultimately ordered. (ECF No. 91). Moreover, as both Judges Lawson and Cleland explained, at least once the class became certified – which happened only about two months after the preliminary injunction was issued, it was not even proper for Doe 1 to continue prosecuting his claims in this case. (ECF No. 85 ("[Does 1 & 2] cannot opt out of the class. . . . Maintaining both cases, therefore, would be imprudent, as [Does 1 & 2] effectively would be pursuing two lawsuits simultaneously seeking the same core relief before two different judges."); ECF No. 91

("[Does 1 & 2] have no right to separately litigate their claims for injunctive relief . . .")). Finally, the post-preliminary injunction work performed by Doe 1's counsel all related to issues that Doe 1 lost on the merits, including his claims for money damages and Defendants' entitlement to various forms of immunity.  (ECF No. 91).

In sum, the work that resulted in Doe 1's prevailing party status ended upon entry of the preliminary injunction in this case.  None of the legal work that followed advanced that status, and indeed it all related to matters decided against Doe 1 on the merits. Accordingly, none of that time is compensable under § 1988(b).  And, even if the Court had the discretion to award fees for that work under the statute, for all of the foregoing reasons, it should decline to do so.

        *d.*     *The Rates Charged by Doe 1's Counsel Are Reasonable and Appropriate, and the Work Performed in Connection with Obtaining the Preliminary Injunction Was Not Excessive*

The State Defendants also argue that the rates charged by Doe 1's counsel are unreasonable, and that the hours they billed for work performed are excessive.  The Court disagrees.

The "lodestar" method of calculating attorney fees is "the guiding light of our fee-shifting jurisprudence."  *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992).  The "lodestar amount" is the reasonable amount of attorney fees, calculated as a reasonable hourly rate multiplied by the number of hours reasonably expended on the litigation.  *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  The Court has reviewed the evidence submitted by the parties, which includes Doe 1's counsel's billing records, two affidavits submitted by Doe 1 – one from his lead counsel, Sarah Howard, and another from Miriam

18

Aukerman, Senior Attorney with the American Civil Liberties Union, and the State Bar of Michigan's 2020 Economics of Law Practice Attorney Income and Billing Summary submitted by Defendants (the "Survey").  (ECF Nos. 98, 108-1, 108-2, 100-1).  Having reviewed those materials, the Court finds that the rates charged by lead attorney Howard ($400/hr.), and her associate attorney Erin Dornbos ($275/hr.) are reasonable and well within the range of billing rates for counsel with similar experience and qualifications.

Attorney Howard is a partner at Pinsky, Smith, Fayette & Kennedy, LLP, and has been practicing law for almost twenty years.  According to the Survey, law firm partners between the 50th and 75th percentile in terms of billing rates charge between approximately $350/hr. and $425/hr.  (ECF No. 100-1, PageID.1341).  Attorney Howard's proposed rate of $400/hr. falls somewhere in between, which is reasonable considering her many years of practice, the specialized area of law involved, and the excellent quality of her work which resulted in a significant and quick success for her client.  As an associate, attorney Dornbos' proposed rate of $275/hr. similarly falls between the 50th and 75th percentile rankings, and is likewise reasonable.  (*Id.*).

In terms of the work performed that resulted in the issuance of the preliminary injunction, the Court finds counsel to have been extremely efficient.  Attorney Howard billed a total of 9.35 hours in connection with the preliminary injunction work, while attorney Dornbos billed a total of 6.9 hours.  (ECF No. 98, PageID.1291-96) (through 7/15/18 entry re. preliminary injunction).  The billing records reflect no unreasonable duplication of effort.  (*Id.*).  At their rates of $400/hr. and $275/hr., respectively, the total attorney fee award is $5,637.50.  The billing records for the salient period reflect

recoverable costs of the $400.00 filing fee and $7.50 for parking. (*Id.*, PageID.1294, 1299). Thus, Doe 1's total attorney fee and cost award is $6,045.00.

   e.  *Doe 2 is Not a Prevailing Party and Is Not Entitled to a Fee Award*

  The analysis of the "prevailing party" issue is very different as to Doe 2. First, unlike Doe 1, who prevailed on his motion for preliminary injunction, Doe 2 withdrew his preliminary injunction motion just a week after filing it because, during that short window in between, his probation was terminated. (ECF Nos. 33, 40).[5] Second, Doe 2 did not even enter the case until more than two months *after* Doe 1 obtained the preliminary injunction, and more than two weeks *after* the classes were certified in *Does II*. (ECF Nos. 27, 32; *Does II*, ECF No. 46, PageID.693). Because Doe 2 was a member of the *Does II* certified class at the time he joined this case, his claims were never properly litigated in this case. *See supra* at 17-18. Finally, like the work done on behalf of Doe 1 post-preliminary injunction, none of the work done on Doe 2's behalf in this case advanced the preliminary injunction. *Id.* On the contrary, that work all related to other matters which were decided against Doe 2 on the merits. *Id.*

  For all of the foregoing reasons, Doe 2 is not a prevailing party under 42 U.S.C. § 1988(b), and is not entitled to an award of fees or costs in this case.

---

[5] Doe 2's assertion that his probation was discharged as a result of his joining in this action is speculative. (ECF No. 108, PageID.1497, 1501). Moreover, as noted above, *supra* at 16, the Supreme Court has rejected the "catalyst theory," and any voluntary decision to discharge Doe 2's probation cannot render him a "prevailing party" entitled to an award of fees. *Buckhannon*, 532 U.S. at 610.

F.     *Because Defendant Schriner's Involvement Related Solely to Doe 2, No Part of the Award Should be Assessed Against Him*

Defendants are correct that "[t]here is no basis to award attorneys' fees against Defendant Schriner." (ECF No. 111, PageID.1588).  As explained above, an award of fees and costs in this case is only appropriate in connection with Doe 1's success in obtaining a preliminary injunction, but defendant Shriner was not a party to the case at that time. Rather, Schriner became a party about two months later when Doe 2 entered into this case and named Schriner as a defendant.  (ECF No. 32).  Moreover, that was about two weeks after the class was certified in *Does II*, meaning it was improper for Doe 2 to be pursuing claims against Schriner in this action, in the first place.  *See supra* at 17-18.

For all of these reasons, none of the award recommended herein should be assessed against defendant Schriner.

## IV.     <u>Conclusion</u>

For all of the reasons stated above, **IT IS RECOMMENDED** that Does 1 & 2's motion for attorneys' fees and costs **(ECF No. 108)** be **GRANTED IN PART AND DENIED IN PART**.  Specifically, plaintiff John Doe 1 should be awarded a total of <u>**$6,045.00**</u> in attorneys' fees and costs against <u>**defendants Snyder and Etue only**</u>.  In all other respects, the motion should be **DENIED**.

Dated: August 22, 2022                          s/David R. Grand
Ann Arbor, Michigan                            DAVID R. GRAND
                                               United States Magistrate Judge

21

## **REVIEW**

Either party to this action may object to and seek review of this Report and Recommendation ("R&R"), but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed .R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this R&R.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  A copy of any objection must be served upon this Magistrate Judge.  E.D. Mich. L.R. 72.1(d)(2).

*Note these additional requirements at the direction of Judge Cleland:*

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this R&R to which it pertains.  Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 22, 2022.

s/Eddrey O. Butts

EDDREY O. BUTTS

Case Manager
